UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JENNIFER BUTURLA, :
    Plaintiff, :
     :
v. : 3:11-cv-00661-WWE
     :
THOMAS LATANZIO, :
CITY OF BRIDGEPORT, :
WILLIAM FINCH, and :
JOSEPH L. GAUDETT, JR., :
    Defendants. :

## MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Jennifer Buturla filed this action against defendants Thomas Lattanzio, the City of Bridgeport, William Finch, and Joseph Gaudett, Jr. alleging that Mr. Lattanzio engaged in a pattern of harassing and stalking plaintiff and that the other defendants refused to properly assist her. Plaintiff claims invasion of privacy, intentional infliction of emotional distress, negligent infliction of emotional distress and violation of substantive due process against defendant Lattanzio. Plaintiff's only claim against the other three defendants is violation of substantive due process as guaranteed by the Fourteenth Amendment to the United States Constitution.

Defendants City of Bridgeport, Mayor William Finch, and Chief of Police Joseph Gaudett, Jr. have moved for summary judgment as to plaintiff's due process claim against them. For the following reasons, defendants' motion will be granted.

## BACKGROUND

At all relevant times, defendant Lattanzio was employed as a Bridgeport police officer in the City of Bridgeport. Plaintiff's claims arise out of her allegations that while he was off-duty, Mr. Lattanzio harassed and stalked her between 2007 and 2010.

Plaintiff's first interacted with Mr. Lattanzio when he called her to make an appointment to look at a condo unit that she was showing.  Mr. Lattanzio met plaintiff to view the unit, and left after stating that he would call if he was interested in purchasing it.  Plaintiff was uncomfortable during the meeting with Mr. Lattanzio because he said words to the effect of: "Oh, you're pretty.  Who's your boyfriend?  I'll kill him.  Where do you live?  If I lived near you, I would stalk you."

Mr. Lattanzio subsequently called plaintiff and asked to sign a contract for the condo unit.  Plaintiff made an appointment with Mr. Lattanzio to sign the contract but asked a co-worker to attend the appointment because she was uncomfortable about Mr. Lattanzio's comments during the first meeting.  Mr. Lattanzio did not say anything inappropriate to plaintiff during the contract meeting, but plaintiff observed that he seemed to be under stress because he was sweating and his eyes were "rolling back."

After the contract was signed, plaintiff referred Mr. Lattanzio to a real estate colleague, Barbara Kelly, to find him rental housing until his condo was ready.  Plaintiff referred this business to Ms. Kelly because plaintiff was frightened by Mr. Lattanzio.

Ms. Kelly found Mr. Lattanzio a condo unit to rent at 325 Lafayette Street, Bridgeport, Connecticut, where plaintiff owned a condo and lived.  The unit Mr. Lattanzio rented was one floor above and slightly lateral to plaintiff's unit, and the units overlapped slightly.

Shortly after learning that Mr. Lattanzio was living at 325 Lafayette Street, plaintiff discovered that Ms. Kelly had actually sold him the unit instead of the condo Mr. Lattanzio had contracted to purchase from plaintiff.

After he moved in, plaintiff began seeing Mr. Lattanzio around the condo complex.

Plaintiff avoided Mr. Lattanzio when she saw him at a distance, thus limiting their interaction. Between late 2007 and April of 2010, Mr. Lattanzio made only one attempt to speak with plaintiff. That interplay occurred when Mr. Lattanzio mentioned something about flowers that plaintiff was planting outside her condo and then conversed with plaintiff's friend who was also present.

Other than this one interaction, between late 2007 and April 2010, Mr. Lattanzio did not initiate any conversation with plaintiff, but plaintiff contends that Mr. Lattanzio would stare at her whenever they were in close proximity and a few times, while in his car, would circle her in the parking lot. Further, plaintiff alleges that Mr. Lattanzio began to park his car outside plaintiff's window, despite having an assigned parking spot elsewhere, in order to stare at and intimidate her.

Plaintiff walked away from Mr. Lattanzio when she thought he was staring at her, and he did not follow her. Between late 2007 and April of 2010, Mr. Lattanzio neither attempted to contact plaintiff by phone, email, or letter, nor tried to approach her in person. Prior to April 2010, plaintiff did not file any police reports regarding Mr. Lattanzio with the Bridgeport Police Department or any other law enforcement agency. Likewise, she had not reported Mr. Lattanzio's behavior to any employee of the City of Bridgeport.

On April 27, 2010, plaintiff went into the laundry room of the condo complex and encountered Mr. Lattanzio. She inferred that he was waiting for her there because she did not see any quarters, soap, or laundry with him. Without plaintiff saying anything to Mr. Lattanzio, he yelled at her and called her vulgar names. Plaintiff responded by telling Mr. Lattanzio that he was a police officer and that what he was doing constituted harassment. He then left the laundry

3

room.

Although Mr. Lattanzio did not touch plaintiff, she asserts that his arms were raised about chest level and he was moving toward her.

Within half an hour of the laundry room incident, plaintiff went to the main headquarters of the Bridgeport Police department to lodge a complaint against Mr. Lattanzio. She filed a "citizen's complaint" with the Department's Office of Internal Affairs.

The next day, on April 28, 2010, plaintiff again contacted the Bridgeport Police Department to report that the left front tire of her car had been slashed. Plaintiff believed that Mr. Lattanzio was responsible, but had no proof. The responding officer informed plaintiff about the process of obtaining a restraining order and notified a sergeant within the Department about the incident.

Later that day, plaintiff went to the detective bureau of the Department to report her slashed tire and the laundry room incident. Plaintiff explained that she was scared of Mr. Lattanzio. Detective Keith Bryant expressed his belief that there was insufficient evidence to make an arrest. Detective Bryant then asked a female detective, Detective Giselle Doszpoj, to speak to Ms. Buturla. Immediately thereafter, Detective Doszpoj and two other detectives went to the condo complex to speak with Mr. Lattanzio.

The detectives went to Mr. Lattanzio's condo and spoke with him about plaintiff's complaints. Mr. Lattanzio responded by accusing plaintiff of harassing him, but admitted to calling her a "dike" in the laundry room. He denied slashing her tire. Detective Doszpoj told Mr. Lattanzio to stay away from plaintiff and to avoid any confrontations with her. She further informed Mr. Lattanzio that she had no problem getting an arrest warrant for anyone, including a

4

fellow officer.  After leaving the condo, Detective Doszpoj called plaintiff to inform her that Mr. Lattanzio had been warned to keep his distance from her and avoid further incidents with her.  Plaintiff was aware that Detective Doszpoj took her concerns seriously, had spoken to Mr. Lattanzio, and was willing to arrest him if necessary.

On April 30, 2010, plaintiff applied to the Connecticut Superior Court for a restraining order against Mr. Lattanzio, but her application was denied because she could not satisfy the statutory requirement that the target of the order be a family/household member or a person whom she had dated.

On May 7, 2010, Plaintiff spoke on the phone to Lt. Rebeca Garcia, who was in command of the Office of Internal Affairs.  During the phone call, plaintiff confirmed that her complaint against Mr. Lattanzio was based on off-duty conduct.  On May 10, 2010, Lt. Garcia sent plaintiff a letter indicating that the April 27, 2010, complaint against Mr. Lattanzio could not be investigated as a "citizen's complaint" because it involved his off-duty conduct and was therefore outside the purview of the Office of Internal Affairs.  Lt. Garcia's letter also stated that she and plaintiff had discussed several different options for plaintiff to pursue.  Lt. Garcia further stated that she had made Chief Gaudett aware of the situation and that plaintiff could contact him directly to speak to him about the matter.

On May 20, 2010, plaintiff went to the front desk of the Bridgeport Police Department at 300 Congress Street.  She spoke with Sgt. James Myers and stated that she wanted to make a formal harassment claim against Mr. Lattanzio.  Plaintiff showed Sgt. Myers the police report from April 28, 2010, and the May 7, 2010, letter from the Office of Internal Affairs rejecting her citizen's complaint.  Plaintiff reported that Internal Affairs had offered her some other options

5

after rejecting the citizen's complaint, and that she had tried to speak with Chief Gaudett but hadn't "gotten very far." Plaintiff described her complaints against Mr. Lattanzio and stated that she wanted him to stop harassing her and wanted the department to do something to help resolve the issue. Sgt. Myers took a statement from plaintiff and notified Captain James Baraja.

On May 24, 2010, Chief Gaudett directed Lt. Garcia to open an Internal Affairs investigation regarding plaintiff's harassment complaints made against Mr. Lattanzio. Sgt. Phillip Sharp from the Office of Internal Affairs was assigned to plaintiff's complaint and wrote her a letter to that effect on May 28, 2010. Mr. Lattanzio was also sent an official notification of the investigation, including the fact that Ms. Buturla was the complainant.

At some point, plaintiff had a private meeting with Chief Gaudett and then Assistant Chief Lynn Kerwin about her concerns with Mr. Lattanzio. Plaintiff subsequently had many discussions with Assistant Chief Kerwin about her concerns. Assistant Chief Kerwin attempted to assist plaintiff with her concerns, including recommending that she get a firearm to protect herself and providing her with a police escort to pick up her personal belongings from her condo.

From the time of the laundry room incident on April 27, 2010, at least up until plaintiff's deposition on April 19, 2012, the only contact she had with Mr. Lattanzio was that he would at times park on the street outside the condo complex near her condo unit. During that period of time, plaintiff had not spoken with Mr. Lattanzio; he had not called, emailed, or communicated with her in any way; he had not given her any unwanted attention at all. Since the time of the laundry room incident on April 27, 2010, Mr. Lattanzio has not done anything to make plaintiff feel harassed, threatened or afraid.

April 27, 2010, represents the first time that plaintiff notified any agent or employee of

6

the City of Bridgeport, including Mayor Bill Finch and Chief Joseph Gaudett, about Mr. Lattanzio's harassment.  Mr. Lattanzio has not harassed plaintiff since April 27, 2010.  Nevertheless, plaintiff has not resided at her condo and remains unwilling to return as long as Mr. Lattanzio remains there because of her fear of him.

## DISCUSSION

A motion for summary judgment must be granted if the pleadings, discovery materials before the court and any affidavits show that there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A dispute regarding a material fact is genuine if there is sufficient evidence that a reasonable jury could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Liberty Lobby, 477 U.S. at 24.  The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient; there must be evidence on which the jury could reasonably find for him.  See Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party.  See Patterson v. County of Oneida, 375 F.3d 206, 218 (2d Cir. 2004).  If there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper.  See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

**Substantive Due Process Claims**

For state action to be taken in violation of substantive due process, the action must "shock the conscience."  See County of Sacramento v. Lewis, 523 U.S. 833, 847 (1998).  In County of Sacramento, the Supreme Court stated:

> We have accordingly rejected the lowest common denominator of customary tort liability as any mark of sufficiently shocking conduct, and have held that the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.

Id. at 848.

"[W]hether executive action shocks the conscience depends on the state of mind of the government actor and the context in which the action was taken."  O'Connor v. Pierson, 426 F.3d 187, 203 (2d Cir. 2005).  In this case, there is no evidence of any conduct by the individual defendants Mayor Finch or Chief Gaudett that meets the "shock the conscience" standard.  There is no evidence in the record about Mayor Finch's state of mind at all.  The only evidence of Chief Gaudett's conduct is that he ordered an Office of Internal Affairs investigation of Mr. Lattanzio and met personally with plaintiff about her concerns.

In most cases, affirmative conduct exacerbating a dangerous situation is required to

establish violation by public officials for a private actor's conduct.  The Second Circuit has created an exception, however, when public officials' failure to act induces a third party to harm a plaintiff.  Pena v. DePrisco, 432 F.3d 98, 111 (2d Cir. 2005).  Where "state officials communicate to a private person that he or she will not be arrested, punished, or otherwise interfered with while engaging in misconduct that is likely to endanger the life, liberty or property of others, those officials can be held liable under section 1983 for injury caused by the misconduct . . ."  Id.  In contrast, here, members of the Bridgeport Police Department directed Mr. Lattanzio to stay away from plaintiff and told him they would have no problem arresting him.  Importantly, since plaintiff filed her complaint with the City of Bridgeport Police Department on April 27, 2010, Mr. Lattanzio has not done anything to make plaintiff feel harassed, threatened or afraid.  As no reasonable jury could find that Mayor Finch's or Chief Gaudett's actions were so outrageous that they may fairly be said to shock the conscience, summary judgment will be granted in their favor.

Generally, without a constitutional violation by an individual actor, the City cannot be held liable.  Bonilla v. Jaronczyk, 354 Fed. Appzx. 579, 582 (2d Cir. 2009).  "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006).  Where, as here, the Court finds no underlying constitutional violation, municipal liability under *Monell* should also be rejected.  Id. Accordingly, summary judgment will be granted in favor of the City of Bridgeport.

## **CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment [Doc. #25] is GRANTED.

Dated this 25th day of March, 2013, at Bridgeport, Connecticut.

                                               /s/
                            WARREN W. EGINTON
                            SENIOR UNITED STATES DISTRICT JUDGE